WO                    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA


STEVEN LEE SAUDER,                    )
                                     )
                          Plaintiff,  )
                                     )
        vs.                          )
                                     )
ANDREW SAUL, in his official capacity as  )
Commissioner of the Social Security     )
Administration,                      )
                                     )
                          Defendant.  )        No. 3:19-cv-0308-HRH
                                     )
_____)


O R D E R

This is an action for judicial review of the denial of disability benefits under Title II

of the Social Security Act, 42 U.S.C. §§ 401–434.  Plaintiff Steven Lee Sauder has timely

filed his opening brief[1] to which defendant, Andrew Saul, has timely responded.[2] Oral

argument was not requested and is not deemed necessary.

Procedural Background

On April 6, 2017, plaintiff filed an application for disability benefits under Title II,

alleging that he became disabled on August 1, 2016.  Plaintiff alleges that he is disabled due

_____

    [1]Docket No. 22.

    [2]Docket No. 23.

-1-

to spine problems including arthritis and scoliosis, hernia, perforated ulcer that led to septic shock, high blood pressure, and gout. Plaintiff's application was denied initially, and he requested a hearing. After an administrative hearing on December 7, 2018, an administrative law judge (ALJ) denied plaintiff's application. On October 2, 2019, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's March 7, 2019 decision the final decision of the Commissioner. On December 5, 2019, plaintiff commenced this action for judicial review of the Commissioner's final decision.

## General Background

Plaintiff was born on October 1, 1955. He was 60 years old on his alleged onset date of disability. Plaintiff has an associate's degree in advertising. Plaintiff's past relevant work includes work as an advertising director, a general manager, a sales director, an account manager, a regional manager, and a vice-president of advertising.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 30, 2021."[3]

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

---

[3]Admin. Rec. at 21.

[4]The five steps are as follows:

Step one: Is the claimant presently engaged in substantial

(continued...)

-2-

At step one, the ALJ found that plaintiff had "not engaged in substantial gainful activity since August 1, 2016, the alleged onset date. . . ."[5]

At step two, the ALJ found that plaintiff had "the following severe impairments: lumbar spine degenerative disc disease, status-post lumbar surgeries; obesity; [and] gout[.]"[6] The ALJ found plaintiff's non-healing wound a non-severe impairment because it "did not persist for the requisite 12 consecutive months or longer. . . ."[7] The ALJ also found

---

[4](...continued)
gainful activity?  If so, the claimant is not disabled. If not, proceed to step two.
Step two: Is the claimant's alleged impairment sufficiently severe to limit ... h[is] ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.
Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1?  If so, the claimant is disabled. If not, proceed to step four.
Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... h[is] past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.
Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow . . . h[im] to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 21.

[6]Admin. Rec. at 21.

[7]Admin. Rec. at 21-22.

-3-

plaintiff's "atrial fibrillation, obstructive sleep apnea, hypertension, and diabetes mellitus with chronic kidney disease" non-severe.[8]

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[9] The ALJ considered Listings 1.02 (major dysfunction of a joint) and 1.04 (disorders of the spine).[10]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC." Bray v. Comm'r of Social Security Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009). The ALJ found that plaintiff had "the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that he can occasionally climb ramps and stairs and never climb ladders, ropes, or scaffolds. He can occasionally balance, stoop, kneel, crouch, and crawl."[11]

The ALJ found plaintiff's pain and symptom statements to be "not entirely consistent with the medical evidence and other evidence in the record" because plaintiff had worked for six months after his alleged onset date, because he "disclosed that he stopped working . . . because his employer eliminated his position[,]" because he received unemployment

---

[8]Admin. Rec. at 22.

[9]Admin. Rec. at 22.

[10]Admin. Rec. at 22.

[11]Admin. Rec. at 22.

-4-

benefits "during the 4th quarter of 2016[,]" and because in 2017, he took "a couple of trips" out of town.[12]  The ALJ also discounted plaintiff's statements because he showed medical improvement.[13]

The ALJ found Dr. Arcega's opinion "to be overall persuasive. . . ."[14]  The ALJ found Dr. Gaeta's opinion "somewhat persuasive."[15]  The ALJ found Dr. Humphreys' opinion that plaintiff "was restricted to lifting 5 pounds continuously and 15 pounds occasionally . . . somewhat persuasive" but found the rest of his opinion "unpersuasive."[16]  The ALJ found the opinions of Dr. Aaron and Dr. Fix unpersuasive.[17]

At step four, the ALJ found that plaintiff was "capable of performing past relevant work as a sales director, VP regional sales, and sales manager."[18]

The ALJ thus concluded that plaintiff had "not been under a disability, as defined in the Social Security Act, from August 1, 2016 through the date of this decision. . . ."[19]

---

[12]Admin. Rec. at 23-24.

[13]Admin. Rec. at 25.

[14]Admin. Rec. at 25.

[15]Admin. Rec. at 26.

[16]Admin. Rec. at 26.

[17]Admin. Rec. at 26.

[18]Admin. Rec. at 26.

[19]Admin. Rec. at 27.

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner. . . ." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. (quoting Andrews, 53 F.3d at 1039). If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

## Discussion

Plaintiff first argues that the ALJ erred in rejecting Dr. Gaeta's opinion that plaintiff met or equaled Listing 1.04. Dr. Gaeta testified at the administrative hearing as a medical

-6-

expert and opined that plaintiff met Listing 1.04[20] "since the alleged onset date to at least 6 to 12 months after the second lumbar surgery in 2018."[21]

---

[20]To meet Listing 1.04, a claimant must show:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

or

B. Spinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours;

or

C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

[21]Admin. Rec. at 22. Plaintiff's first lumbar surgery was in December 2016. Admin. Rec. at 677. His second lumbar surgery was on May 23, 2018. Admin. Rec. at 1225.

-7-

At step three, the ALJ found that plaintiff did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. . . ."[22] The ALJ considered Listing 1.04 but rejected Dr. Gaeta's opinion that plaintiff had met this listing for a period of time.

"[F]or claims" such as plaintiff's, which were "filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence." Loriel C. v. Saul, Case No. 2:19-cv-00316-MKD, 2020 WL 4340742, at *11 (E.D. Wash. July 28, 2020). "The new regulations provide that the ALJ will no longer 'give any specific evidentiary weight . . . to any medical opinion(s). . . .'" Id. (quoting Revisions to Rules, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68). "Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources." Id.

> The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of examinations, purpose of the treatment, extent of the treatment, and the existence of an examination), specialization, and "other factors that tend to support or contradict a medical opinion or prior administrative medical finding" (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements[.]"

---

[22]Admin. Rec. at 22.

Id. (quoting 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5)). "Supportability and consistency are the most important factors, and therefore the ALJ is required to explain how both factors were considered." Id. at *11. "The ALJ may, but is not required to, explain how the other factors were considered." Id.

"The Ninth Circuit has not yet stated whether it will continue to require an ALJ to provide 'clear and convincing' or 'specific and legitimate' reasons for rejecting medical opinions given the Commissioner's elimination of the hierarchy" formerly used for considering medical opinions. Tina T. v. Comm'r of Social Security, Case No. C19-6215 BHS, 2020 WL 4259863, at *4 (W.D. Wash. July 24, 2020). But, "[t]he Commissioner's new regulations still require the ALJ to explain his or her reasoning, and to specifically address how he or she considered the supportability and consistency of the opinion." Id. "Obviously the ALJ's reasoning must remain legitimate, meaning lawful or genuine, as it must still be supported by substantial evidence and free from legal error[.]" Id.

The first reason the ALJ gave for rejecting Dr. Gaeta's opinion as to Listing 1.04 was that it was not supported by his testimony. The ALJ explained that "[o]ther than cursorily noting back surgery with postoperative recovery period, Dr. Gaeta did not explain the medical basis for his opinion. Rather, much of his testimony regarding the back intertwined with his opinion of the claimant's non-healing wound meeting or equaling a listing[.]"[23]

_____

[23]Admin. Rec. at 22.

This was not a legitimate reason because Dr. Gaeta did "explain the medical basis for his opinion."[24] Dr. Gaeta testified that plaintiff would have met Listing 1.04 from the alleged onset date until six to twelve months after his 2018 back surgery "because of the pain, because of the abnormal MRI, [and] abnormal physical findings" such as kyphosis.[25] Dr. Gaeta also testified about the fact that plaintiff had back surgery in 2016 "which subsequently was felt . . . not to be satisfactory" and that plaintiff continued to have "significant symptoms" that necessitated the second surgery in 2018.[26] As for whether Dr. Gaeta's "testimony regarding" plaintiff's back impairment was "intertwined with his opinion of [plaintiff's] non-healing wound meeting or equaling a listing,"[27] Dr. Gaeta did testify that "simultaneously" with the wound issues, plaintiff "was having . . . back issues[.]"[28] But this testimony does not undermine Dr. Gaeta's explanation as to why he believed plaintiff met Listing 1.04.

Moreover, if the ALJ felt that Dr. Gaeta's opinion was not adequately supported by his testimony, then the ALJ should have asked Dr. Gaeta to more fully explain his opinion. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the

---

[24]Admin. Rec. at 22.

[25]Admin. Rec. at 1772.

[26]Admin. Rec. at 1772.

[27]Admin. Rec. at 22.

[28]Admin. Rec. at 1772.

-10-

record and to assure that the claimant's interests are considered.'" <u>Tonapetyan v. Halter</u>, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting <u>Smolen v. Chater</u>, 80 F.3d 1273, 1288 (9th Cir. 1986)). "When[,]" as here, "the claimant is unrepresented, . . . , the ALJ must be especially diligent in exploring for all the relevant facts." <u>Id.</u> Because Dr. Gaeta was testifying at the administrative hearing, the ALJ could have easily asked him for further explanation.

The second reason the ALJ gave for rejecting Dr. Gaeta's opinion as to Listing 1.04 was that it was not consistent with the medical evidence of record.[29] By way of example, the ALJ found that "despite the prevalence of obesity with a body mass index reaching 41, there has been no resultant inability to ambulate effectively as evaluated under listing . . . 1.04. . . ."[30] The ALJ also found that "there has been no resultant motor loss as evaluated under listing 1.04. . . ."[31]

The ALJ's second reason was not legitimate. First of all, there is not substantial evidence to support the ALJ's finding that plaintiff was able to ambulate effectively. "[T]o ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." <u>Stimson v. Colvin</u>, 194 F. Supp. 3d 986, 999 (N.D. Cal. 2016) (citation and emphasis omitted). The ALJ cited to Exhibit 6F and pages 13, 17, 24-25, and 29 in Exhibit 18F as examples of medical records

---

[29]Admin. Rec. at 22.

[30]Admin. Rec. at 22.

[31]Admin. Rec. at 22.

showing that plaintiff could ambulate effectively. Exhibit 6F is seventeen pages of treatment notes from Dr. Fix[32] for the period of April 7, 2016 through April 5, 2017.[33] Although there are no physical findings in these treatment notes as to ambulation problems, plaintiff's chief complaint was low back and left leg pain,[34] and on April 5, 2017, he expressly complained of "difficulty walking."[35] Exhibit 18F is treatment notes from the Kidney and Hypertension Clinic of Alaska for the period of September 18, 2017 through December 18, 2017.[36] Page 13 is part of the treatment notes from a December 18, 2017 visit, in which it was noted that plaintiff was "ambulating normally."[37] Page 17 is part of the treatment notes from a September 18, 2017 visit, in which it was noted that plaintiff was "ambulating normally."[38] These two references that plaintiff was ambulating normally do not constitute substantial evidence that plaintiff was ambulating effectively, especially considering that in the same treatment notes on the same pages, it was also noted that he had "shortness of breath when

[32]Dr. Fix was the neurosurgeon who did plaintiff's 2016 lumbar surgery. Admin. Rec. at 677.

[33]Admin. Rec. at 671-687.

[34]Admin. Rec. at 671, 673, 675, 677, 679, and 682.

[35]Admin. Rec. at 683.

[36]Admin. Rec. at 1228-1313.

[37]Admin. Rec. at 1240.

[38]Admin. Rec. at 1244. The ALJ also cited to pages 24-25 and 29 of Exhibit 18F but these are duplicates of the December 18, 2107 treatment notes and the September 18, 2017 treatment notes. Admin. Rec. at 1251-1252 and 1256.

-12-

walking." Moreover, these observations that plaintiff was ambulating normally were made by his kidney doctor and were not exam findings by his neurosurgeons.

Secondly, the medical record shows, contrary to what the ALJ found, that plaintiff had motor loss, which, for purposes of Listing 1.04 is "atrophy with associated muscle weakness or muscle weakness[]." Hase v. Colvin, 207 F. Supp. 3d 1174, 1180 (D. Or. 2016). The evidence of motor loss includes a February 6, 2017 treatment note from the Alaska Heart & Vascular Institute in which Dr. Binder diagnosed "[d]yspena on exertion. Mild to moderate, patient states about one to 2 flights of stairs. He also has significant bendopnea."[39] On July 27, 2017, at an appointment at the AA Pain Clinic, plaintiff "report[ed] muscle weakness."[40] On March 28, 2018, at an Alaska Heart & Vascular Institute visit, plaintiff complained of muscle weakness.[41] In addition, plaintiff's treatment notes from Rebound Physical Therapy show that he had significant muscle weakness.[42] The court "must consider the record as a whole, 'weighing both evidence that supports and evidence that detracts' from the Commissioner's conclusion.'" Holohan, 246 F.3d at 1201 (quoting Tackett, 180 F.3d at 1098). Here, when the record as a whole is considered, it shows that plaintiff had muscle weakness during the relevant time.

---

[39]Admin. Rec. at 1055.

[40]Admin. Rec. at 1118.

[41]Admin. Rec. at 1148.

[42]Admin. Rec. at 1551-1595; 1710-1714.

Consideration of the medical record as a whole shows that, as Dr. Gaeta opined, plaintiff met Listing 1.04A and/or 1.04C from his alleged onset date until November or December 2018. Plaintiff's March 11, 2016 lumbar spine MRI showed

> 1. Markedly progressed L2-3 spondylosis with disc and endplate collapse, likely the result of treated or chronic discitis osteomyelitis. There has been further central spinal canal stenosis, now severe and extremely severe right neural foraminal stenosis. No associated epidural abscess. 2. Progressed spondylosis at L3-4 and L4-5, and L4-5-1 large left posterior paracentral disc protrusion and facet osteoarthritis results in severe left neural foraminal stenosis.[43]

And his January 22, 2018 MRI showed:

> 1. Redemonstrated severe lumbar spondylosis centered at L2-3 with . . . moderate levocurvature of the lumbar spine. 2. Residual severe right and mild left neural foraminal stenosis at L2-3, moderate to severe bilateral neural foraminal stenosis at L3-4 and severe left neural foraminal stenosis at L4-5.[44]

In treatment notes from July 27, 2017, plaintiff reported "lumbar pain with sciatica that radiates through the front and side aspect of his left leg. The level of pain today is 8/10 without medication."[45] On exam, he had an antalgic gait; was ambulating with a cane; had tenderness to palpation at L2, L3, L4, and L5; had positive bilateral straight leg tests; had positive bilateral Gaenslen's tests; had spasms and pain with movement; had reduced ROM; had L2-S1 -- bilaterally facet joint tenderness on palpation at L2-S1; and was most tender at

---

[43]Admin. Rec. at 530.

[44]Admin. Rec. at 1135.

[45]Admin. Rec. at 1117.

-14-

L4-L5.[46]  In an October 25, 2017 treatment note, Dr. Fix noted that plaintiff had an "abnormal gait."[47]  A January 26, 2018 review of systems included the note that plaintiff had "difficulty walking[,]"[48] as did a March 8, 2018 review of systems.[49]  In an April 12, 2018 treatment note, Dr. Humphreys noted that plaintiff had "significant deformity with significant kyphosis over the L2-3 segment and lateral collapse particularly at L3-4 which is severe.  He has intractable pain standing for about 1 minute."[50]  On exam, plaintiff had "obvious curvature [of] his low back and he [is] unbalanced.  Significant pain to palpation [in] his low back and into the posterior aspects of both legs."[51]  Dr. Humphreys also noted that plaintiff was "now significantly debilitated and in significant pain which does not allow him to even sit comfortably for an extended period of time and he can stand for less than a minute" and that he was "unable to move except in a wheelchair for short periods of time. . . ."[52]  In light of the foregoing evidence, the ALJ erred in rejecting Dr. Gaeta's opinion that plaintiff met Listing 1.04 for a closed period of time.

---

[46]Admin. Rec. at 1118.

[47]Admin. Rec. at 1127.

[48]Admin. Rec. at 1129.

[49]Admin. Rec. at 1135.

[50]Admin. Rec. at 1222.

[51]Admin. Rec. at 1222.

[52]Admin. Rec. at 1223.

In addition to improperly rejecting Dr. Gaeta's opinion that plaintiff met Listing 1.04 for a closed period of time, the ALJ's consideration of Dr. Gaeta's opinion that plaintiff met Listing 8.04 "from the onset date until February of 2017"[53] was flawed. Listing 8.04 is for "[c]hronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatment as prescribed." The ALJ did not consider whether plaintiff met Listing 8.04 at step three because at step two, the ALJ had found that "the severity of the wound did not persist for the requisite 12 consecutive months or longer" and thus the ALJ found "it to be non-severe for the period at issue."[54]

But the ALJ erred in finding plaintiff's non-healing wound to be a non-severe impairment because even if this impairment on its own did not persist for the requisite twelve months, the ALJ should have considered this impairment in combination with plaintiff's other impairments. "[A]t the step two inquiry . . . the ALJ must consider the combined effect of all of the claimant's impairments on h[is] ability to function, without regard to whether each alone was sufficiently severe." Smolen, 80 F.3d at 1290. As Dr. Gaeta explained, plaintiff's non-healing wound overlapped with his back problems and thus his wound impairment, when considered in combination with his back impairment, should have been considered severe, which would mean that the ALJ, at step three, should have taken into

_____

[53]Admin. Rec. at 1774.

[54]Admin. Rec. at 22.

-16-

account the fact that Dr. Gaeta opined that the non-healing wound impairment met Listing 8.04 "from the onset date until February of 2017."[55]

In sum, as to Dr. Gaeta, the ALJ erred in rejecting his opinions that plaintiff met Listings 1.04 and 8.04 for a closed period of time.  These errors were not harmless.  "'[A] reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'"  <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting <u>Stout</u>, 454 F.3d at 1055–56).  Here, if the ALJ had fully credited Dr. Gaeta's opinions, she would have had to find that plaintiff was at least disabled for a closed period.

Plaintiff next argues that the ALJ erred in rejecting Dr. Aarons' and Dr. Fix's opinions.  On October 25, 2017, Dr. Fix opined that "Mr. Sauder is effectively disabled by his multiple medical problems."[56]  On April 7, 2017, Dr. Aarons, plaintiff's primary care provider, wrote that plaintiff

> certainly has a lot of problems.  He has stage 3 renal failure.  He has hypertension and gout and also diabetes and chronic back pain that may not be surgically remediable.  I believe that he is permanently totally disabled.  He works on a job in sales that requires him to be on his feet a lot and that is almost unbearabl[y] painful for him with his back problem.[57]

---

[55]Admin. Rec. at 1774.

[56]Admin. Rec. at 1127.

[57]Admin. Rec. at 911.

The ALJ rejected Dr. Aaron's and Dr. Fix's opinions because they "addressed whether the claimant is disabled, an issue reserved to the Commissioner. . . ."[58] The ALJ explained that such evidence was "inherently neither valuable nor persuasive. . . ."[59] Pursuant to the post-March 27, 2017 regulations, an ALJ does not need to "provide any analysis about how" she "considered" evidence that is "inherently neither valuable nor persuasive. . . ." 20 C.F.R. § 404.1520b(c). Such evidence includes "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work[.]" 20 C.F.R. § 404.1520b(c)(3)(i).

The ALJ did not err in rejecting Dr. Aarons' and Dr. Fix's opinions as neither opinion contained much in the way of functional limitations but rather each doctor simply stated that plaintiff was disabled. Under the regulations that apply to this case, the ALJ does not need to consider such statements.

Plaintiff next argues that the ALJ erred as to the opinion of Dr. Humphreys, the neurosurgeon who performed plaintiff's 2018 back surgery. On December 10, 2018, Dr. Humphreys opined that plaintiff

> has the following restrictions: can lift 5 lbs continuously and 15 lbs occasionally. He is unable to stay in one position for long periods of time and needs to be able to have frequent positional changes. He is unable to walk for more than 100 yards and

[58]Admin. Rec. at 26.

[59]Admin. Rec. at 26.

> unable to climb stairs. He was a VP for advertising and is
> unable to complete the tasks of the job anymore.[60]

The ALJ found Dr. Humphreys' opinion as to plaintiff's lifting capacity "somewhat persuasive" but rejected the remainder of his opinion because he "did not provide a medical explanation" for his opinion, because his opinion was not supported by his treatment notes, and because the issue of whether plaintiff could do his prior job is an issue reserved to the Commissioner.[61]

As to whether Dr. Humphreys' opinion contained a medical explanation, a treating physician's treatment notes can provide the explanation for his opinion. Burrell v. Colvin, 775 F.3d 1133, 1140 (9th Cir. 2014). Here, the record contained Dr. Humphreys' extensive treatment notes,[62] which means that, contrary to what the ALJ found, Dr. Humphreys' opinion was supported.

The ALJ also found that Dr. Humphreys' opinion was inconsistent with his treatment notes. Inconsistency is one of the primary factors the ALJ considers under the regulations that apply to this case. The ALJ explained that Dr. Humphreys' opinion was inconsistent with his treatment notes because the August 2018 treatment notes showed that plaintiff

---

[60]Admin. Rec. at 1751.

[61]Admin. Rec. at 26.

[62]Admin. Rec. at 1715-1750.

-19-

"ambulated with an even gait without an assistive device and with less pain" and that "x-rays showed good alignment without sign of complication. . . ."[63]

Dr. Humphreys' treatment notes do show that plaintiff was improving after the 2018 surgery, but this does not necessarily mean that his treatment notes were inconsistent with his opinion about plaintiff needing to change positions, not being able to walk more than 100 yards, and not being able to climb stairs. Plaintiff could have had such functional limitations even though he was showing improvement. Inconsistency was not a legitimate reason for the ALJ to reject a portion of Dr. Humphreys' opinion.

As for the third reason given by the ALJ, that Dr. Humphreys was opining on an issue reserved to the Commissioner, under the new regulations, the ALJ no longer has to consider such statements. Thus, this was a legitimate reason for the ALJ to reject Dr. Humphreys' opinion that plaintiff was unable to do his past relevant work. But, because the other two reasons given by the ALJ were not legitimate, the ALJ erred in rejecting Dr. Humphreys' opinion that plaintiff would need frequent positional changes, could not walk more than 100 yards, and could not climb stairs.

Plaintiff next argues that the ALJ erred as to Dr. Arcega's opinion. Dr. Arcega was a non-examining physician. On September 29, 2017, Dr. Arcega opined that plaintiff could occasionally lift/carry twenty pounds, frequently lift/carry ten pounds, stand/walk for four hours, sit for six hours, was unlimited as to push/pull; and could occasionally climb

_____

[63]Admin. Rec. at 26.

ramps/stairs/ropes/ladders/scaffolds, balance, stoop, kneel, crouch, and crawl.[64] The ALJ found "Dr. Arcega's medical opinion to be overall persuasive as he accounted for all the claimant's impairments, including obesity with significant lumbar spondylosis resulting in lumbar surgery."[65]

Dr. Arcega's opinion could not, however, by itself, constitute substantial evidence to support the ALJ's RFC. Dr. Arcega noted that plaintiff's first back surgery "went relatively well" and that although plaintiff "alleges back pain[,] the recent record does not support failure of said back surgery."[66] But, the record plainly shows that plaintiff's first back surgery did fail as evidenced by need for the second back surgery in 2018, a surgery that took place <u>after</u> Dr. Arcega had rendered his opinion.

Plaintiff next argues that the ALJ erred in discounting his pain and symptom statements.

> [W]hen a claimant presents "objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms [the claimant] alleged," the ALJ is required to determine the extent to which the claimant's statements regarding the intensity, persistence, and limiting effects of his or her subjective symptoms . . . are consistent with the record evidence as a whole and, consequently, whether any of the individual's symptom-related functional limitations and restrictions are likely to reduce the claimant's capacity to perform work-related activities.

---

[64]Admin. Rec. at 59-60.

[65]Admin. Rec. at 25.

[66]Admin. Rec. at 60-61.

Lourdes C. v. Saul, Case No. 8:19-cv-01531-JC, 2020 WL 2733666, at *3 (C.D. Cal. May 25, 2020) (quoting 20 C.F.R. §§ 404.1529(a), (c)(4); SSR 16-3p). "When an individual's subjective statements are inconsistent with other evidence in the record, an ALJ may give less weight to such statements and, in turn, find that the individual's symptoms are less likely to reduce the claimant's capacity to perform work-related activities." Id. "In such cases, when there is no affirmative finding of malingering, an ALJ may 'reject' or give less weight to the individual's subjective statements 'only by providing specific, clear, and convincing reasons for doing so.'" Id. (quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "This requirement is very difficult to satisfy." Id.

The ALJ found plaintiff's pain and symptom statements to be "not entirely consistent with the medical evidence and other evidence in the record" because plaintiff had worked for six months after his alleged onset date, because he "disclosed that he stopped working . . . because his employer eliminated his position[,]" because he "applied for and received unemployment benefits during the 4th quarter of 2016[,]" and because in 2017, plaintiff had taken "a couple of trips" out of town.[67] The ALJ also discounted plaintiff's statements because plaintiff showed medical improvement.[68]

The first reason given by the ALJ was that plaintiff worked for six months after his alleged onset date. Although "[a]n ALJ may consider any work activity, including part-time

---

[67]Admin. Rec. at 23-24.

[68]Admin. Rec. at 24.

work, in determining whether a claimant is disabled[,]" <u>Ford v. Saul</u>, 950 F.3d 1141, 1156 (9th Cir. 2020), this was not a clear and convincing reason in this case because plaintiff completed his application pro se. The discrepancies in his application as to his alleged onset date are much more likely a result of his pro se status than evidence that plaintiff was being less than truthful or exaggerating his pain and symptoms.

The second reason the ALJ gave was that plaintiff reported that he quit working because his position had been eliminated. In assessing what weight to give a claimant's subjective pain and symptom statements, an ALJ may consider the fact that a claimant stopped working for reasons other than disability. <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001). While plaintiff did state that he stopped working because his position had been eliminated, he also stated that he stopped working because of his condition.[69] Thus, this was not a very convincing reason for discounting plaintiff's pain and symptom statements.

The third reason the ALJ gave for discounting plaintiff's pain and symptom statements was that plaintiff received unemployment benefits in the last quarter of 2016. This was not a convincing reason because "while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether [plaintiff] held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations." <u>Carmickle v. Commissioner, Social Sec. Admin.</u>, 533 F.3d 1155, 1161–62 (9th Cir. 2008) (internal citations omitted).

---

[69]Admin. Rec. at 153.

-23-

The fourth reason the ALJ gave for discounting plaintiff's pain and symptom statements was that plaintiff took a couple of trips in 2017. This was not a clear and convincing reason because the ALJ did not consider plaintiff's pain symptoms or activity level before, during, or after these trips. The record shows that plaintiff had to limit his PT prior to trips and that he used a wheelchair when traveling.[70]

Finally, the ALJ discounted plaintiff's pain and symptom statements because he showed medical improvement. "An ALJ may discount a claimant's testimony based on effective treatment." Christine L. v. Saul, --- F. Supp. 3d ---, 2020 WL 1528252, at *5 (D. Or. 2020). The record does show that plaintiff's back impairment was improving after the 2018 surgery. This improvement may have some bearing on plaintiff's pain and symptom statements as they relate to his condition after the 2018 surgery, but this was not a convincing reason to discount all of plaintiff's pain and symptom statements.

Because the ALJ erred as to Dr. Gaeta's opinions, Dr. Humphreys' opinion, and plaintiff's pain and symptom statements, the court must consider whether to remand this matter for further administrative proceedings or for an award of benefits. "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted). "Conversely, where the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an

_____

[70]Admin. Rec. at 1594, 1712.

-24-

immediate award of benefits." Id. The court follows a three-step analysis to determine whether a remand for benefits would be appropriate. "First, [the court] must conclude that 'the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion.'" Brown-Hunter, 806 F.3d at 495 (quoting Garrison v. Colvin, 759 F.3d 995, 1020 (9th Cir. 2014)). "Second, [the court] must conclude that 'the record has been fully developed and further administrative proceedings would serve no useful purpose.'" Id. (quoting Garrison, 759 F.3d at 1020). "Third, [the court] must conclude that 'if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.'" Id. (quoting Garrison, 759 F.3d at 1021). But, "even if all three requirements are met, [the court] retain[s] 'flexibility' in determining the appropriate remedy" and "may remand on an open record for further proceedings 'when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act.'" Id. (quoting Garrison, 759 F.3d at 1021)).

A remand for an immediate award of benefits for the closed period of August 1, 2016 through December 23, 2018 is appropriate here.[71] Dr. Gaeta testified that he could not give "a precise date but I think from the onset date at least through six months, you know, beyond

---

[71]Because the court is remanding for an immediate award of benefits for this closed period, there was no need to consider plaintiff's due process argument which was largely based on a contention that at the administrative hearing, the ALJ did not develop the record as to his limitations during the time period of August 2016 through December 2018.

his surgery, and maybe 12 months [if] one wants to be more conservative."[72] He then more precisely testified that plaintiff would "certainly equal . . . a listing, you know, right up until I would say November of this year. And if one wants to be generous, you know, one could go for the whole year."[73] Based on this testimony, if Dr. Gaeta's opinions are credited as true, the ALJ would be required to find plaintiff disabled from his alleged onset date until six months after his May 2018 surgery, which would be December 23, 2018. As for whether plaintiff continued to be disabled after December 23, 2018, further proceedings are appropriate as the record has not been fully developed on that issue.

Plaintiff requests that any remand be to a different ALJ. The

> [f]actors to be considered before ordering reassignment include: (1) a clear indication that the ALJ will not apply the appropriate legal standard on remand; (2) a clearly manifested bias or inappropriate hostility toward any party; (3) a clearly apparent refusal to consider portions of the testimony or evidence favorable to a party, due to apparent hostility to that party; [and] (4) a refusal to weigh or consider evidence with impartiality, due to apparent hostility to any party.

Risco v. Saul, Case No. 18- cv-07193-RMI, 2020 WL 2733958, at *7 (N.D. Cal. May 26, 2020). While the ALJ was somewhat dismissive of plaintiff during the administrative hearing, a reassignment is not warranted in this instance.

---

[72]Admin. Rec. at 1772.

[73]Admin. Rec. at 1772.

<u>Conclusion</u>

The final decision of the Commissioner is reversed. This matter is remanded for an award of immediate benefits for the closed period of August 1, 2016 through December 23, 2018 and for further proceedings to determine whether plaintiff continued to be disabled after December 23, 2018.

DATED at Anchorage, Alaska, this 15th day of September, 2020.

<u>/s/ H. Russel Holland</u>
United States District Judge

-27-